UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMESA RANKINS,<br><br>Defendant. | Criminal No. 22cr10186<br><br>Violation:<br><br>Count One: Theft of Government Money<br>(18 U.S.C. § 641)<br><br>Counts Two - Four: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

INDICTMENT

General Allegations

1. At all times relevant to this Indictment, JAMESA RANKINS ("RANKINS") was a resident of Brockton, Massachusetts.

2. Beginning in or about August 2016 and continuing through on or about January 6, 2021, RANKINS worked as a Sales and Service Distribution Associate for the United States Postal Service ("USPS") at the Montello Post Office in Brockton, Massachusetts.

3. INDIVIDUAL NO. 1 was a resident of Brockton, Massachusetts, and was RANKINS' associate. INDIVIDUAL NO. 1 was the principal of a Massachusetts limited liability company, hereinafter referred to as the "Company." A bank account for the Company listed the Company's address as RANKINS' address. During an interview with law enforcement officers on January 6, 2021, RANKINS acknowledged that she knew INDIVIDUAL NO. 1 socially.

1

4. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law in March 2020. Through the CARES Act, Unemployment Insurance ("UI") claims were eligible to receive additional monies and benefit weeks from temporary federal programs: Federal Pandemic Unemployment Compensation ("FPUC"); Loss Wage Assistance-FEMA ("LWA"); Extended Benefits ("EB"); and Pandemic Emergency Unemployment Compensation ("PEUC")

5. The Massachusetts Department of Unemployment Assistance ("MA DUA") administered and managed all of the CARES Act unemployment programs in Massachusetts. Individuals eligible to receive CARES Act UI in Massachusetts could apply for benefits through an online portal.

## Theft of Postal Money Orders

6. As part of her official duties for the USPS, RANKINS sold postal money orders.

7. During the relevant period, USPS permitted purchasers of postal money orders whose money orders were lost, damaged, or erroneous to present a receipt to a postal clerk and receive a replacement money order without paying a replacement fee.

8. From approximately September 2020 to January 2021, RANKINS engaged in a scheme to convert postal money orders for her and INDIVIDUAL NO. 1's personal use.

9. As part of this scheme, RANKINS generated replacement "no fee" money orders, without the customer physically present at her customer window, and which a customer did not request. Each of these money orders was addressed to INDIVIDAL NO. 1 or the Company.

10. From on or about December 4, 2020 to on or about January 6, 2021, after a surveillance camera was installed above RANKINS' workstation at the Montello Post Office,

video surveillance showed that RANKINS processed approximately 45 replacement money orders without the customer physically present at her workstation. After generating each replacement money order, RANKINS then placed the money order in her purse or other personal storage area.

11. In total, from on or about September 9, 2020, to on or about January 6, 2021, RANKINS generated approximately 126 replacement money orders addressed to INDIVIDUAL NO. 1 or the Company. These money orders had a total value of approximately $96,878.45. After generating these replacement money orders, instead of delivering them to a customer, RANKINS retained them for her personal use, and delivered the majority of them to INDIVIDUAL NO. 1, who then cashed them at various check cashing businesses, including one referred to hereafter as "Check Cashing Business NO. 1." In at least one instance, RANKINS negotiated the stolen money order herself at a Check Cashing Business NO. 1. Specifically, surveillance video shows RANKINS negotiating money orders at Check Cashing Business NO. 1 on December 24, 2020. Contemporaneous records show that four money orders (in the amounts of $580.00, $1,000.00, $802.60, and $300.00) issued by RANKINS and addressed to INDIVIDUAL NO. 1 were negotiated at Check Cashing Business NO. 1 on that date.

<u>Scheme to Fraudulently Obtain Pandemic Unemployment Assistance</u>

12. Between no later than June 2020 through October 2020, RANKINS fraudulently collected pandemic unemployment benefits totaling approximately $15,532 while employed with USPS.

13. On or about May 25, 2020, RANKINS submitted an online application for unemployment benefits. RANKINS began receiving unemployment benefits on or about June 8, 2020 and continuing through on or about October 6, 2020.

14. As a condition to receiving pandemic unemployment benefits, MA DUA required RANKINS to electronically submit weekly certifications attesting to, among other things, the fact that she (a) did not work during the week in question, and (b) did not receive income from any other sources not previously reported to MA DUA. The weekly certification further required RANKINS to report on the job search activities that she undertook during the week in question.

15. In submitting the weekly certifications, RANKINS was required to check a box acknowledging that the information that she provided was true and correct. RANKINS submitted weekly certifications for the periods between in or about May 31, 2020 and in or about September 6, 2020, certifying that she was not presently employed. RANKINS knew that her certifications were false because, during the period that she collected pandemic unemployment payments, RANKINS was a full time USPS employee and was receiving regular bi-weekly paychecks.

## COUNT ONE
## Theft of Government Money
## (18 U.S.C. § 641)

The Grand Jury charges:

16. The Grand Jury re-alleges and incorporates by reference paragraphs 1-15 of this Indictment.

17. From on or about September 9, 2020 to on or about January 6, 2021, in Brockton, in the District of Massachusetts, and elsewhere, the defendant,

### JAMESA RANKINS,

did, on a recurring basis, knowingly and willfully embezzle, steal, purloin, and convert to her use and the use of another, any money and thing of value of the United States and of any department and agency thereof, in a total amount greater than $1,000, namely, postal money orders having a value of approximately $96,878.45.

All in violation of Title 18, United States Code, Section 641.

## COUNTS TWO - FOUR
## Wire Fraud
## (18 U.S.C. § 1343)

18. The Grand Jury re-alleges and incorporates by reference paragraphs 1-17 of this Indictment.

19. On or about the dates listed below, in the District of Massachusetts and elsewhere, the defendant,

## JAMESA RANKINS,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
| --- | --- | --- |
| 2 | 6/28/2020 | Online submission of a request for benefits for Claim ID 202001 for the week of 6/28/2020 through the MA DUA |
| 3 | 8/16/2020 | Online submission of a request for benefits for Claim ID 202001 for the week of 8/15/2020 through the MA DUA |
| 4 | 9/20/2020 | Online submission of a request for benefits for Claim ID 202001 for the week of 9/19/2020 through the MA DUA |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

1. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 641, set forth in Count 1, and in violation of Title 18, United States Code, Section 1343, set forth in Counts 2 to 4, the defendant,

JAMESA RANKINS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to:

    a. $112,410.45, to be entered in the form of a forfeiture money judgment.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
EUGENIA M. CARRIS
EVAN D. PANICH
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: JULY 28, 2022
Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

8